## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPARKLE HILL, INC.,<br>*individually and as the*<br>*representative of a class of*<br>*similarly-situated persons*,<br>  Plaintiff,<br><br>         v.<br><br>Invecor, LLC,<br>*doing business as*<br>AMB Business Supply,<br>  Defendant. | Civil No. 13-4172 (NLH/AMD)<br><br>**OPINION** |

**APPEARANCES**

JAMES C. SHAH
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
475 WHITE HORSE PIKE
COLLINGSWOOD, NJ 08107-1909
     *On behalf of plaintiff*

JOHN H. KING
THOMPSON, BECKER & BOTHWELL, LLC
WOODCREST PAVILION
TEN MELROSE AVENUE
SUITE 100
CHERRY HILL, NJ 08003

DAVE E. KAWALA
CATHERINE BASQUE WEILER
SWANSON, MARTIN & BELL, LLP
330 NORTH WABASH, SUITE 3300
CHICAGO, IL 60611
     *On behalf of defendant*

**HILLMAN**, District Judge

     In this putative class action for claims concerning an

alleged "junk fax," presently before the Court is defendant's

motion to dismiss plaintiff's complaint.  For the reasons
expressed below, defendant's motion will be granted in part,
denied in part, and continued in part.

**BACKGROUND**

On January 24, 2007, plaintiff, Sparkle Hill, Inc.,
received an unsolicited telephone facsimile on its fax machine
from defendant, Invecor, LLC.  The fax was an advertisement
selling cash register and credit card paper rolls.[1]  Based on
this fax, plaintiff has filed a three-count complaint for
violations of the Telephone Consumer Protection Act ("TCPA"), 47
U.S.C. § 227, the New Jersey "Junk Fax Statute" ("NJJFS"),
N.J.S.A. 56:8-157 et seq., and the New Jersey Consumer Fraud Act
("NJCFA"), N.J.S.A. 56:8-1 et seq.  Plaintiff has pleaded these
claims as a putative class action.

Defendant has moved to dismiss all of plaintiff's claims,
arguing that plaintiff's claims are not viable because its

---

[1] Even though plaintiff's complaint references the fax as
"Exhibit A" to its third amended complaint, the exhibit is not
attached.  (See Docket No. 76.)  "Exhibit A" is also not
attached to the third amended complaint contained in other
docket entries.  (See Docket Nos. 73, 74, 77.)  Plaintiff's
original complaint was transferred from the United States
District Court for the Northern District of Illinois Eastern
Division, having been removed from the Illinois state court.
"Exhibit A" is attached to plaintiff's first amended complaint
provided as part of the appendix of transferred documents.  (See
Docket No. 1, Attachment #4, at page 48.) Even though the Court
will presume that this document is the junk fax at issue, the
content of the fax is not material to the resolution of the
current motion.

damages are *de minimis*.  If that request for relief is not granted, defendant seeks dismissal of plaintiff's request for class action treatment of its claims, arguing that TCPA-type claims are not maintainable under New Jersey law.  Defendant also argues that plaintiff's claims under the New Jersey Junk Fax Statute and NJCFA are duplicative, and should be merged into one count.  Plaintiff has opposed defendant's motion.

<u>DISCUSSION</u>

**A.   Jurisdiction**

This Court has jurisdiction over plaintiff's federal claim under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

**B.   Standard for Motion to Dismiss**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that

3

serve as a basis for the claim.  <u>Bogosian v. Gulf Oil Corp.</u>, 562
F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal
Rules of Civil Procedure do not require a claimant to set forth
an intricately detailed description of the asserted basis for
relief, they do require that the pleadings give defendant fair
notice of what the plaintiff's claim is and the grounds upon
which it rests."  <u>Baldwin Cnty. Welcome Ctr. v. Brown</u>, 466 U.S.
147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support the
claim.'"  <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007)
(quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974)); <u>see also</u>
<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684 (2009) ("Our decision in
<u>Twombly</u> expounded the pleading standard for 'all civil actions'
. . . ."); <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir.
2009) ("<u>Iqbal</u> . . . provides the final nail-in-the-coffin for
the 'no set of facts' standard that applied to federal
complaints before <u>Twombly</u>.").

Following the <u>Twombly/Iqbal</u> standard, the Third Circuit has
instructed a two-part analysis in reviewing a complaint under
Rule 12(b)(6).  First, the factual and legal elements of a claim
should be separated; a district court must accept all of the
complaint's well-pleaded facts as true, but may disregard any

4

legal conclusions.  Fowler, 578 F.3d at 210 (citing Iqbal, 129
S. Ct. at 1950).  Second, a district court must then determine
whether the facts alleged in the complaint are sufficient to
show that the plaintiff has a "'plausible claim for relief.'"
Id. (quoting Iqbal, 129 S. Ct. at 1950).  A complaint must do
more than allege the plaintiff's entitlement to relief.  Id.;
see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d
Cir. 2008) (stating that the "Supreme Court's Twombly
formulation of the pleading standard can be summed up thus:
'stating . . . a claim requires a complaint with enough factual
matter (taken as true) to suggest' the required element.  This
'does not impose a probability requirement at the pleading
stage,' but instead 'simply calls for enough facts to raise a
reasonable expectation that discovery will reveal evidence of'
the necessary element").  A court need not credit either "bald
assertions" or "legal conclusions" in a complaint when deciding
a motion to dismiss.  In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the
burden of showing that no claim has been presented.  Hedges v.
U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages,
Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

     Finally, a court in reviewing a Rule 12(b)(6) motion must
only consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of judicial notice.

S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

**C. Discussion**

    **1.   Whether plaintiff's claims are *de minimis***

Under the TCPA, it is unlawful "to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. § 227(b)(1)(C).  The "person or entity" that receives an unsolicited fax may seek to enjoin the violations, and the recipient may recover for its actual monetary loss, or receive $500 per fax, whichever is greater. 47 U.S.C. § 227(b)(3). That amount can be trebled if the violation was willful or knowing.  47 U.S.C. § 227(b)(1)(C), (b)(3)(B).  New Jersey's Junk Fax Act provides for similar relief.[2] See Oettinger v. Stevens Commercial Roofing, LLC, 2013 WL 3811765, *2 (N.J.

---

[2] As discussed below, plaintiff's claims premised on the NJCFA are one-in-the-same as its NJJFA claims.

6

Super. Ct. App. Div. 2013), <u>cert. denied</u>, 82 A.3d 939 (N.J. 2013) (citing 47 U.S.C. § 227(b)(1)(c), (b)(3); N.J.S.A. 56:8-158(a), -159(a)) (holding that "absent a more explicit renunciation of the expansive approach to liability exposure taken in the TCPA, we believe the NJJFA should be read in harmony with its federal counterpart").

The alleged damages here, as in most other junk fax cases, concern the cost of the recipient's paper and toner, the recipient's loss of use of its fax machine to conduct legitimate business, and the recipient's employees' wasted time in considering the junk fax. Defendant's primary argument for the dismissal of plaintiff's claims, premised under the *de minimis non curat lex* maxim, is that the alleged harm caused by a single junk fax is so insignificant and trivial, the law – and this Court – should not concern itself with adjudicating such trifles.

Even though the Court understands defendant's position, neither the TCPA nor the NJJFA provides a *de minimis* exception to liability.[3]  Under the TCPA, "[i]t shall be unlawful for any

---

[3] The case law cited by defendant to support its *de minimis* argument is inopposite, as those courts dismissed junk fax claims brought under the common law theory of conversion. <u>See Stonecrafters, Inc. v. Foxfire Printing and Packaging, Inc.</u>, 633 F. Supp. 2d 610, 615 (N.D. Ill. 2009); <u>Old Town Pizza of Lombard, Inc. v. Corfu-Tasty Gyro's Inc.</u>, 2012 WL 638765, *4 (N.D. Ill. 2012).

person . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, <u>an</u> unsolicited advertisement . . . .," and a "person or entity may . . . bring . . . an action to recover for actual monetary loss from such <u>a</u> violation, or to receive $500 in damages for <u>each</u> such violation, whichever is greater . . . ."  47 U.S.C. § 227(b)(1)(C), (b)(3) (emphasis added).[4]  Similarly, under the NJJFA, "[a] person within this State shall not use any telephone facsimile machine, computer or other device to send <u>an</u> unsolicited advertisement to a telephone facsimile machine within this State," and "[a]ny person aggrieved by <u>a</u> violation of this act may bring an action in the Superior Court in the county where <u>the</u> transmission was sent or was received, or in which the plaintiff resides, for damages . . . ."  N.J.S.A.

---

[4] Exceptions are if:

(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient; (ii) the sender obtained the number of the telephone facsimile machine through--(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution . . . .

47 U.S.C. § 227(b)(1)(C).  The NJJFA contains a similar provision. <u>See</u> N.J.S.A. 56:8-158.

56:8-158(a), -159(a) (emphasis added).  It is clear from the plain language of these statutes that each provides a remedy for a single junk fax.[5]

Accordingly, because the language of the TCPA and NJJFA permits the maintenance of an action for a single unsolicited fax, and defendant has not provided any authority to support the imposition of a *de minimis* exception to that right, defendant's motion to dismiss plaintiff's claims based on the *de minimis* nature of plaintiff's alleged harm must be denied.

---

[5] The legislative history also supports the ability for the recipient of an unsolicited fax to pursue his claim for a single violation.  See, e.g., Local Baking Products, Inc. v. Kosher Bagel Munch, Inc., 23 A.3d 469, 472 (N.J. Super. Ct. App. Div. 2011), cert. denied, 209 N.J. 96 (2011) ("The drafters recognized that damages from a single violation would ordinarily amount to only a few pennies worth of ink and paper usage, and so believed that the $500 minimum damage award would be sufficient to motivate private redress of a consumer's grievance through a relatively simple small claims court proceeding, without an attorney. See 137 Cong. Rec. S16205-06 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings) ("[I]t would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages.")"); Oettinger v. Stevens Commercial Roofing, LLC, 2013 WL 3811765, *2-3 (N.J. Super. Ct. App. Div. 2013) ("Despite the slight variation between the language in the NJJFA and the TCPA, our review of the legislative history, structure, and purposes of the NJJFA leads us to conclude that the Legislature did not intend to impose an added requirement of tangible harm upon a claimant seeking to vindicate his or her rights under the Act. Instead, the $500 sum for each violation referred to in the NJJFA represents statutory damages that must be awarded upon proof of a violation, regardless of whether a plaintiff can establish discrete harm flowing from that violation.").

### 2.   Whether plaintiff's NJCFA and NJJFA are duplicative

Plaintiff has asserted separate counts against defendant for violations of the New Jersey Consumer Fraud Act and the New Jersey Junk Fax Act.  Defendant has moved to dismiss plaintiff's NJCFA count as duplicative of its NJJFA count because the Junk Fax Act is simply a subsection of the Consumer Fraud Act.  The Court agrees with defendant.

The NJCFA is contained in Chapter 8 of the New Jersey Statutes, and begins at section 56:8-1 and continues through section 56:8-195.  Sections 56:8-157 to -160 concern the sending of unsolicited faxes.  An aggrieved person's remedy is to bring an action in court for injunctive relief and for actual or statutory damages.  N.J.S.A. 56:8-159(a),(b).  Section 56:8-160 also provides "additional remedies and penalties," and states that a violation of the Junk Fax Act constitutes a violation of the Consumer Fraud Act, and shall be subject to all remedies and penalties available under the NJCFA as a whole, in addition to those under the Junk Fax Act contained in N.J.S.A. 56:8-159.  Consequently, because a violation of the Junk Fax Act is also a violation of the Consumer Fraud Act, plaintiff's separate counts for violations of these provisions must be merged into one.

10

**3.   Whether plaintiff's TCPA and NJJFA claims may be pursued as a class action**

    **a.   TCPA**

Defendant argues that plaintiff's TCPA claims cannot proceed as a class action.  To support its position, defendant relies on <u>Local Baking Products, Inc. v. Kosher Bagel Munch, Inc.</u>, 23 A.3d 469, 476-77 (N.J. Super. Ct. App. Div. 2011), <u>cert. denied</u>, 35 A.3d 679 (N.J. 2011).  In <u>Local Baking Products</u>, the New Jersey Appellate Division determined that "a class action suit is not a superior means of adjudicating a TCPA suit," and it explained:

> The combination of the TCPA's design and New Jersey's procedures suggests that the benefit of a class action has been conferred on a litigant by the very nature of the procedures employed and relief obtained.  The cost of litigating for an individual is significantly less than the potential recovery.
>
> Ultimately, we note that the same facts required to prevail on an individual TCPA claim—an unsolicited fax was received from a sender with whom the recipient had no prior business relationship—are identical to the facts that would have to be proven to merely identify a single class member. We discern no superiority in such a situation. In sum, the class action cannot meet the superiority test and is inappropriate here.

<u>Local Baking Products</u>, 23 A.3d at 476 (internal citations omitted).  Contrary to defendant's position, however, the <u>Local Baking Products</u> case does not support the dismissal of plaintiff's putative class action for TCPA violations because state law on that issue is not applicable in this Court.

The TCPA provides that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State" an action to enjoin TCPA violations or to recover actual monetary loss.  47 U.S.C. § 227(b)(3).  Despite defendant's argument regarding the application of New Jersey state law in this case, the state-oriented language of § 227(b)(3) does not require the application of state law in federal court.  The Supreme Court has made it clear that through the TCPA, Congress "enacted detailed, uniform, federal substantive prescriptions and provided for a regulatory regime administered by a federal agency," and that federal law governs in TCPA actions brought in federal court.  Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740, 753 (2012)).  Mims explained that § 227(b)(3) "speaks to state courts, and is an invitation to them to open their doors to aggrieved consumers who have been harassed by unsolicited phone calls and facsimiles, but without requiring them to do so."  Landsman & Funk, P.C. v. Skinder-Strauss Associates, 2012 WL 6622120, *6 (D.N.J. 2012) (citing Mims, 132 S.Ct. at 751).  Federal courts, however, "remain available as separate and independent fora for plaintiffs to vindicate their rights under this federal law."  Id.; see also City Select Auto Sales, Inc. v. David Randall Associates, Inc., 296 F.R.D. 299, 312 (D.N.J. 2013) ("It follows that § 227(b)(3) recognized a

12

concurrent jurisdiction for TCPA cases in the state court only as permitted by state laws or rules, without purporting to limit TCPA cases in federal court.").

Thus, the TCPA provides for a federal cause of action, and federal law, not New Jersey state law, applies to the class certification question in TCPA cases.  See <u>City Select Auto Sales</u>, 296 F.R.D. at 312.  Accordingly, because federal law does not prohibit the maintenance of a TCPA class action in federal court, <u>see</u> <u>id.</u> (citing cases),[6] plaintiff's putative class action for defendant's alleged violations of the TCPA cannot be dismissed at this pleading stage.[7]

     **b.   NJJFA**

Although at the present time it seems clear that TCPA class actions are maintainable in federal court but not in New Jersey state court, this case presents an additional issue of the interplay between substantive state law and federal procedural law with regard to plaintiff's putative class action for NJJFA

---

[6] A recent Massachusetts's appeals court surveyed dozens of state and federal court decisions and found that "the majority of courts to have discussed the issue under various cognate class action provisions and hold that the class action mechanism is a superior avenue for adjudication of claims under 47 U.S.C. § 227."  <u>Hazel's Cup & Saucer, LLC v. Around The Globe Travel, Inc.</u>, 2014 WL 4106870, 3 (Mass. App. Ct. August 22, 2014).

[7] Of course, the issue of whether plaintiff's TCPA claim can be certified as a class action must be determined pursuant to a class action certification motion.

13

violations.

As set forth above, New Jersey disfavors the prosecution of unsolicited fax violations in the form of a class action.  That decision arose in the context of a state court case brought pursuant to the TCPA.  See Local Baking Products, Inc. v. Kosher Bagel Munch, Inc., 23 A.3d 469, 476-77 (N.J. Super. Ct. App. Div. 2011), cert. denied, 35 A.3d 679 (N.J. 2011).  In contrast, as also discussed above, class action treatment of a TCPA claim is available if it is brought in federal court.  This is because the TCPA is considered a federal question which confers federal jurisdiction.  See City Select Auto Sales, Inc. v. David Randall Associates, Inc., 296 F.R.D. 299, 312 (D.N.J. 2013); see also Fitzgerald v. Gann Law Books, Inc., 956 F. Supp. 2d 581, 586 (D.N.J. 2013) (explaining that Mims held that the federal courts have direct, federal-question jurisdiction over TCPA claims).  Even though, as argued by the defendant in Fitzgerald v. Gann Law Books, that a "$500 TCPA case can be transformed into a federal question national class action claiming millions of dollars in damages," simply because the plaintiff chose federal court over state court, "'Congress passed [the TCPA] as written, and the federal courts are left with the consequences.'"  Fitzgerald, 956 F. Supp. 2d at 587 (quoting Bank v. Spark Energy Holdings, LLC, 4:11-cv-4082, 2012 WL 4097749 at *3 (S.D. Tex. Sept. 13, 2012)).

14

The disparate result of proceeding in federal court instead of state court for a TCPA claim is relevant to the issue of whether a class action may be maintained for a New Jersey Junk Fax Act claim brought in federal court under supplemental jurisdiction.  Noted above, the NJJFA provides relief similarly afforded by the TCPA to recipients of unsolicited faxes, and the New Jersey courts have instructed that the NJJFA should be read "in harmony" with the TCPA.  See Oettinger v. Stevens Commercial Roofing, LLC, 2013 WL 3811765, *2 (N.J. Super. Ct. App. Div. 2013), cert. denied, 82 A.3d 939 (N.J. 2013).  Unlike the TCPA, however, the NJJFA provides a specific direction as to the proper forum for asserting a NJJFA claim:

> Any person aggrieved by a violation of this act may bring an action in the Superior Court in the county where the transmission was sent or was received, or in which the plaintiff resides, for damages or to enjoin further violations of this act. . . . The court shall proceed in a summary manner. . . .

N.J.S.A. 56:8-159(a),(b).

The language of the NJJFA and the above-discussed case law present two questions in this case:

(1) Should this Court apply Federal Civil Procedure Rule 23 to the determination of whether plaintiff can maintain a class action for violations of the state law Junk Fax Act when considering that (a) the New Jersey state courts prohibit class actions in state TCPA cases, and New

15

Jersey reads the NJJFA in harmony with the TCPA, and (b) the main reason that Rule 23 applies to a TCPA claim in federal court is because the TCPA is a federal law presenting a federal question?

(2) Can plaintiff maintain a NJJFA claim in federal court at all, since the NJJFA dictates a specific forum?

The court in <u>Fitzgerald</u> was faced with the same issue. The court pondered, "[t]he statutory injunction to proceed 'in a summary manner,' tends to suggest that a class action was not within the State legislature's contemplation[,] [a]nd after all, nothing compelled New Jersey to create a substantive right of action at all; does not that greater power include the lesser one of setting the conditions under which plaintiffs may obtain classwide relief?" <u>Fitzgerald</u>, 956 F. Supp. 2d at 588. Nonetheless, the <u>Fitzgerald</u> court followed the Supreme Court's decision in <u>Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393, 415-16 (2010), and determined that the maintenance of a class action governed by Rule 23 is permissible for a NJJFA claim.[8] <u>Id.</u>

---

[8] In the context of determining that a class action was maintainable in federal court for claims based on a New York state law that explicitly prohibited the assertion of a class action, the Supreme Court in <u>Shady Grove</u> concluded,

> We must acknowledge the reality that keeping the federal-court door open to class actions that cannot proceed in state court will produce forum shopping.

16

Because, however, neither plaintiff nor defendant squarely addresses the NJJFA class action issue in its briefs, and because the Fitzgerald court did not specifically discuss the forum provision in the NJJFA, the Court will stay its decision on defendant's motion to dismiss plaintiff's NJJFA claims pending further briefing that answers this Court's questions posed above.[9]

---

That is unacceptable when it comes as the consequence of judge-made rules created to fill supposed "gaps" in positive federal law. For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, "state law must govern because there can be no other law." But divergence from state law, with the attendant consequence of forum shopping, is the inevitable (indeed, one might say the intended) result of a uniform system of federal procedure. Congress itself has created the possibility that the same case may follow a different course if filed in federal instead of state court. The short of the matter is that a Federal Rule governing procedure is valid whether or not it alters the outcome of the case in a way that induces forum shopping. To hold otherwise would be to "disembowel either the Constitution's grant of power over federal procedure" or Congress's exercise of it.

Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 559 U.S. 393, 415-416 (2010) (internal citations omitted).

[9] The parties may also wish to address whether this Court should decline to exercise supplemental jurisdiction over plaintiff's putative class action for its NJJFA claims.  See 28 U.S.C. § 1367(a), (c) (providing that a court may exercise supplemental jurisdiction over state law claims related to the claims giving rise to original jurisdiction, but a district court may decline to exercise supplemental jurisdiction under subsection (a) if, inter alia, "(1) the claim raises a novel or complex issue of

**CONCLUSION**

For the reasons expressed herein, defendant's motion to dismiss plaintiff's complaint is granted as to the dismissal of plaintiff's duplicative NJCFA claim.  Defendant's motion is denied as to its request to dismiss plaintiff's TCPA and NJJFA claims because the damages are *de minimis*, and it is also denied as to defendant's motion to preclude plaintiff from maintaining a putative class action claims for TCPA violations.  The Court will reserve decision on whether plaintiff's NJJFA claim can proceed in this Court, either as a single claim or as a class action.

An appropriate Order will be entered.


Date:  September 23, 2014            s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

State law, . . . (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction").