---

SPARKLE HILL, INC.,
*individually and as the
representative of a class of
similarly-situated persons*,
   Plaintiff,

      v.

Invecor, LLC,
*doing business as*
AMB Business Supply,
   Defendant.

Civil No. 13-4172 (NLH/AMD)

**OPINION**

---

**APPEARANCES**

JAMES C. SHAH
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
475 WHITE HORSE PIKE
COLLINGSWOOD, NJ 08107-1909

PHILLIP A. BOCK
BOCK, HATCH, LEWIS &
OPPENHEIM, LLC
134 N. LA SALLE ST., STE. 1000
CHICAGO, IL 60603

BRIAN J. WANCA
ANDERSON + WANCA
3701 ALGONQUIN ROAD, SUITE 760
ROLLING MEADOWS, IL 60008

   *On behalf of Plaintiff*

JOHN H. KING
THOMPSON, BECKER & BOTHWELL, LLC
WOODCREST PAVILION
TEN MELROSE AVENUE
SUITE 100
CHERRY HILL, NJ 08003

DAVE E. KAWALA
CATHERINE BASQUE WEILER
SWANSON, MARTIN & BELL, LLP
330 NORTH WABASH, SUITE 3300
CHICAGO, IL 60611

*On behalf of Defendant*

**HILLMAN**, District Judge

In this class action for claims concerning "junk" faxes, presently before the Court is Plaintiff's motion for summary judgment. For the reasons expressed below, Plaintiff's motion will be granted as to liability only.

## BACKGROUND

On January 24, 2007, Plaintiff, Sparkle Hill, Inc., a dry cleaning store, received an unsolicited telephone facsimile on its fax machine from Defendant, Invecor, LLC, d/b/a AMB Business Supply, which was in the business of selling cash register and office supplies. The fax was an advertisement selling paper rolls for cash register and credit card machines. Defendant had engaged Business to Business Solutions ("B2B"), which sold fax blasting services, to send out faxes to advertise its business.

B2B gathered a list of targets from a database purchased from InfoUSA, and after payment from Defendant and Defendant's approval of the content of the fax, B2B successfully faxed 34,668 faxes to 28,836 different fax numbers. The fax did not

contain the proper out-opt information, and Plaintiff claims that it, as well as the 28,835 other recipients, did not consent to receiving the fax.

Plaintiff filed a putative class action complaint against Defendant for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1] On February 25, 2016, the Court granted Plaintiff's motion for class certification, which was unopposed by Defendant. The Court approved the following class:

> All persons with whom Invecor, LLC d/b/a AMB Business Supply did not have an established business relationship, who were successfully sent one or more unsolicited faxes during the period December 10, 2006, through January 24, 2007, stating, "Credit Card & Cash Register Paper Rolls" or "Cash Register & Credit Card Receipt Paper Rolls" and "AMB Business Supply 1161 Rankin Dr Troy MI 48083 Toll Free: 800-399-4030."

(Docket No. 134 at 3, Amended Order Granting Class Certification.)

Plaintiff, through a claims administrator, mailed the

---

[1] Plaintiff also lodged claims against Defendant for violations of the New Jersey "Junk Fax Statute" ("NJJFS"), N.J.S.A. 56:8-157 et seq., and the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 et seq. During the resolution of Defendant's motion to dismiss on September 23, 2014, the Court questioned whether Plaintiff's NJJFA claim could proceed as a class action in federal court. (Docket No. 81.) Pursuant to the Court's direction, the parties submitted supplemental briefing on the issue (Docket No. 83, 84), but the Court has not made a final determination, as the parties subsequently attempted to resolve the matter through settlement. A private resolution of the matter was not been reached, and Plaintiff's current motion for summary judgment seeks judgment solely on its TCPA claim. Plaintiff is directed to inform the Court of its intentions regarding its state law claims.

3

Court-approved notice (Docket No. 136) to the class members – i.e., owners of 28,836 fax numbers that were sent Defendant's fax. Plaintiff has now moved for summary judgment in the class's favor in the amount of $17,334,000, which is $500 in statutory damages for each time Defendant's unsolicited fax advertisement was successfully sent to a class member's fax machine. Defendant has opposed Plaintiff's motion.[2]

## DISCUSSION

**A. Jurisdiction**

This Court has jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331, and supplemental jurisdiction over

---

[2] Plaintiff originally filed its motion for summary judgment on April 29, 2016, but in August 2016, Plaintiff filed a motion to postpone the Court's ruling until after class notice had issued and the time within which class members could opt-out or stay in had expired. The Court granted that motion. (Docket No. 133.) On December 2, 2016, Plaintiff informed the Court that the notice had issued, and indicated that the opt-out date was December 26, 2016. (Docket No. 136.) On April 21, 2017, Plaintiff asked that its motion for summary judgment be re-activated for resolution, but noted that because Defendant's insurer had withdrawn its defense and that issue was being litigated in a declaratory judgment action in federal district court in Michigan, Defendant wanted this case stayed pending the resolution of the declaratory judgment action concerning Defendant's insurance coverage. (Docket No. 137.) This Court granted Plaintiff's request and reactivated the summary judgment motion. (Docket No. 138.) Plaintiff, however, has not informed the Court whether any class members have opted out of the class. Plaintiff is directed to provide that information to the Court, which may affect the form and amount of judgment that will be entered in the class's favor on Plaintiff's TCPA claims.

4

Plaintiff's state law claims under 28 U.S.C. § 1367.

**B.   Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  <u>Id.</u>  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." <u>Marino v. Industrial Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004)(quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp.</u>

v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

Under the TCPA, it is unlawful "to send, to a telephone facsimile machine, an unsolicited advertisement."  47 U.S.C. § 227(b)(1)(C).  The "person or entity" that receives an unsolicited fax may seek to enjoin the violations, and the recipient may recover for its actual monetary loss, or receive $500 per fax, whichever is greater.  47 U.S.C. § 227(b)(3).  That amount can be trebled if the violation was willful or knowing.  47 U.S.C. § 227(b)(1)(C), (b)(3)(B).

The alleged actual damages in this case, as in most other junk fax cases, concern the cost of the recipient's paper and toner, the recipient's loss of use of its fax machine to conduct legitimate business, and the recipient's employees' wasted time

6

in considering the junk fax.  Exceptions to liability under the TCPA are if:

> (i) the unsolicited advertisement is from a sender with an established business relationship with the recipient; (ii) the sender obtained the number of the telephone facsimile machine through--(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or (II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution . . . .

47 U.S.C. § 227(b)(1)(C).

However, even if the unsolicited fax meets these exceptions, a sender is still liable under the TCPA if the fax fails to include an opt-out statement that enables the recipient to easily remove itself from any future unsolicited advertisements.  "[T]he advertisement must clearly and conspicuously notify a recipient that it may opt out of receiving any future unsolicited advertisements, must state that the sender's failure to comply with a request for removal within 30 days violates applicable law, and must contain a 'cost-free mechanism,' including a domestic phone number and fax machine number, for the recipient to transmit its removal request." City Select Auto Sales, Inc. v. David/Randall Associates, Inc., 96 F. Supp. 3d 403, 418-19 (D.N.J. 2015) (citing 42 U.S.C. § 227(b)(2)(D)(i)-(v); 47 C.F.R. § 64.1200(a)(4)).

In order to grant summary judgment on a TCPA claim, the

7

plaintiff must point to specific evidence in the record sufficient to establish that: (1) the defendant utilized a "telephone facsimile machine" to send "one or more faxes;" (2) that the transmissions constituted "'advertisements;'" and (3) that the defendant sent the transmissions without the recipient's consent, absent application of one of the statutory exceptions. City Select, 96 F. Supp. at 416 (citation omitted).

In conjunction with this TCPA violation, or in the alternative, a plaintiff may obtain summary judgment by pointing to evidence in the record that: (1) the defendant utilized a "telephone facsimile machine" to send "one or more faxes;" (2) that the transmissions constituted "'advertisements;'" and (3) the advertisements failed to contain a statutorily-compliant opt-out notice. See id. at 418.

Plaintiff has provided the following facts to support its claim that Defendant violated the TCPA:

1. Defendant, through B2B, used a fax machine to send 34,668 unsolicited faxes.

2. Defendant's fax constituted an advertisement for the sale of cash register and credit card paper rolls.

3. Plaintiff, and all others similarly situated, did not consent to receive Defendant's fax.

4. The fax failed to contain the proper opt-out notice.

Based on these facts, Plaintiff argues that it is entitled

to judgment in the class's favor for statutory damages of $500 for each unsolicited advertisement faxed by Defendant.

Defendant has opposed Plaintiff's motion on several bases. First, Defendant argues that because B2B faxed the advertisements, it cannot be held liable as the "sender" of the unsolicited faxes. Defendant also argues that Plaintiff has not provided proof to establish that Defendant directed B2B to target unconsenting recipients. The TCPA explicitly rejects this attempted defense to liability.

"The TCPA prescribes two parallel, and often blended, theories of 'sender' liability . . . : the first applies to 'the person or entity' on 'whose behalf' a third party transmits an unsolicited facsimile advertisement; the other applies to the person or entity 'whose goods or services are advertised or promoted in the unsolicited advertisement.'" City Select, 96 F. Supp. 3d at 419 (citing 47 C.F.R. § 64.1200(f)(10)) (other citation omitted). "[T]he TCPA, by its own terms, creates a form of vicarious liability making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act." Id. at 419-20 (quotations and citation omitted).

Additionally, a defendant cannot exculpate itself "from liability simply by hiring an independent contractor for the purposes of transmitting unsolicited facsimiles on their

9

behalf," and instead "a person whose services are advertised in an unsolicited fax transmission, and on whose behalf the fax is transmitted, may be held [strictly] liable under the TCPA's ban on the sending of faxes, despite not physically transmitting the fax." Id. (quotations and citations omitted).

Without dispute, the fax at issue here advertised Defendant's services, Defendant designed the fax, and Defendant hired B2B to fax its advertisement. Simply arguing that Defendant did not provide B2B with the fax numbers to which B2B sent the fax does not absolve Defendant from liability under the TCPA.

Second, Defendant argues that it is not clear whether any of the fax numbers B2B purchased from InfoUSA, and to which B2B sent the fax, met the exceptions to liability under the TCPA – i.e., whether the numbers were of established business customers, generated from the voluntary communication of such number, or from a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution.

As to the named Plaintiff, Defendant has not provided any evidence to refute that Plaintiff did not consent to the fax. Thus, because Defendant's fax to Plaintiff fails to meet the exceptions to liability under 47 U.S.C. § 227(b)(1)(C), Plaintiff has established Defendant's liability for its

individual claim.  The same can be said for any member of the class who is similarly situated – i.e. any non-consenting member of the class who received a fax from the Defendant's agent.

However, how many members of the class, or which members of the class, actually fit that definition of non-consenting has not been established in the record.  Plaintiff argues that Defendant's fax sent to all of the other 28,335 fax numbers were similarly unconsenting under § 227(b)(1)(C), but Defendant argues that some portion of those numbers might actually meet the exception to liability.  Neither party has provided concrete proof to support its position.

Moreover, the law is not clear whether on summary judgment it is Plaintiff's burden to show as part of its affirmative claim that the exception to liability provision does not apply, or whether it is Defendant's burden as part of its defense to liability to show that the exception to liability provision does apply. See, e.g., Evankavitch v. Green Tree Servicing, LLC, 793 F.3d 355, 361 (3d Cir. 2015) (citing Schaffer v. Weast, 546 U.S. 49, 56 (2005)) (where the plain text of a statute is silent on the allocation of the burden of persuasion, a court begins with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims, but another general rule of statutory construction provides that the burden of proving justification or exemption under a special exception to the

prohibitions of a statute generally rests on one who claims its benefits) (other citations and quotations omitted); cf. Zean v. Fairview Health Services, 858 F.3d 520, 526 n.3 (8th Cir. 2017) (citing Schaffer, 546 U.S. at 60; Van Patten v. Vertical Fitness Group, LLC, 847 F.3d 1037, 1044 (9th Cir. 2017); Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302, 1305 (11th Cir. 2015); NLRB v. Seedorff Masonry, Inc., 812 F.3d 1158, 1168 (8th Cir. 2016)) (noting that (1) the ordinary default rule is that plaintiffs bear the risk of failing to prove their claims, (2) other circuits have interpreted an FCC ruling to mean that consent is an affirmative defense under the TCPA, but (3) the FCC's 2015 Order did not use the term "affirmative defense" and did not address the "important distinction between [a defendant's] burden of going forward with evidence establishing a prima facie case for [a defense or exception], and [a plaintiff's] ultimate burden of persuasion"); Booth v. Appstack, Inc., 2016 WL 3620798, at *4 (W.D. Wash. 2016) (assessing the law in the Ninth Circuit and finding that the exception to liability under the TCPA is not part of a plaintiff's affirmative claim).

The Court does not have to reach that issue, however, because even if one or all of the 34,866 faxes met the exception to liability provision, none of the sent faxes contained a complete and statutorily required opt-out statement, which would

have enabled the recipient to easily remove itself from any future unsolicited advertisements. Several different versions of the fax were sent, and many did not contain any opt-out language at all. While it is true that a couple of versions contained the following statement at the bottom of the fax: "If you received this fax in error and would like to be removed from our database, call toll free 1-800-511-8261].", see Docket No. 111-4, this language is not sufficient under the TCPA. To be compliant, the fax transmission must also include a statement that the sender's failure to comply with a request for removal within 30 days violates applicable law, and provide a domestic fax machine number for the recipient to transmit its removal request. 42 U.S.C. § 227(b)(2)(D)(i)-(v); 47 C.F.R. § 64.1200(a)(4)).

In sum, none of the transmitted faxes satisfied the statute and accompanying regulations and therefore each violated the TCPA. See City Select, 96 F. Supp. 3d at 418 (finding that even if the defendants' submission raised a genuine issue of fact as to whether any class members consented to the advertisement, or had an existing business relationship with defendant, summary judgment would still be warranted because the record contained no genuine dispute that the advertisements failed to contain a statutorily compliant opt-out notice) (citing Holtzman v. Turza, 728 F.3d 682 (7th Cir. 2013) ("Because [the defendant] omitted

13

[the required] opt-out notices, it does not matter which recipients consented or had an established business relation with [the defendant].")).

Consequently, the certified class is entitled to judgment in its favor for each advertisement faxed that failed to contain the proper opt-out notice to each class member.[3]


**CONCLUSION**

For the reasons expressed above, Plaintiff's motion for summary judgment on its class action complaint that Defendant violated the TCPA must be granted. Within 15 days of the date of this Opinion and accompanying Order, Plaintiff is directed to (1) inform the Court on the status of its state law claims, (2) provide documentation to demonstrate class member opt-out notices, if any; and (3) provide a proposed form of judgment as to the TCPA claims, along with a justification for its request

---

[3] Because Plaintiff has not provided the Court with any notices from class members who have opted out of this litigation, the Court cannot enter final judgment until the precise number of unsolicited faxes and class members is established. Moreover, the assessment of damages is not quantifiable at this time, as it is possible that class members suffered damages in excess of the $500 statutory penalty. See 47 U.S.C. § 227(b)(3) (the recipient may recover for its actual monetary loss, or receive $500 per fax, whichever is greater). Plaintiff is not seeking treble damages for willful violations under 47 U.S.C. § 227(b)(1)(C), (b)(3)(B). In addition to the number of class members who have opted-out, Plaintiff should advise the Court of its basis to conclude that no class member seeks damages in excess of $500.

for statutory damages for each violation.[4]

    An appropriate Order will be entered.


Date: October 24, 2017          s/ Noel L. Hillman
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.

---

[4] In City Select, the court granted summary judgment on the plaintiff's class action TCPA violation claims, and awarded judgment in the amount of $22,405,000, which constituted the statutory damages for the defendant's "junk fax" violations. The Court noted, however, "Counsel are requested to confer, as discussed at oral argument of this motion, whether a judgment in a significantly smaller sum would likely provide full statutory recovery to all probable members of the Class who respond and file claims. For example, if the typical "yield" of the notice of a class claims process is assumed to be 15%, based on experience, then a judgment fund of 15% of $22,405,000, which is $3,360,750, may suffice, subject to future adjustment based on claims approved. Counsel are invited to discuss the viability of such a mechanism to implement this judgment in the class action context." City Select, 96 F. Supp. 3d at 427 n.20. Counsel should meet and confer and advise the Court within 30 days as to whether a similar course should be followed by the parties here.